Charles E. Cooney v. Commissioner.
Cooney v. Commissioner
Docket No. 105907.
United States Tax Court
1942 Tax Ct. Memo LEXIS 17; 1 T.C.M. (CCH) 264; T.C.M. (RIA) 42670; 12/22/1942
*17 Laurence Sovik, Esq., for the petitioner. Harold D. Thomas, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax as follows: 1932
$8,351.01
1933
3,552.68
1934
938.98
1935
2,047.56
Petitioner assails the inclusion in income of amounts earned prior to the date of filing a petition in bankruptcy and the disallowance of capital losses. By affirmative answer, claim is made for a 25 per cent addition to the tax for 1932. Findings of Fact Petitioner, a resident of Syracuse, New York, filed his income tax returns in the Twenty-first District of New York. He had a one-third interest in the law partnership of Costello, Cooney & Fearon, which he had held for many years prior to June 11, 1932. He filed a voluntary petition in bankruptcy on that date and was adjudged a bankrupt on June 14. On July 7, a trustee in bankruptcy was elected. At some later date in 1932, he became a member of a new law partnership with the same name as that of the former. 1. Between January 1 and June 11, 1932, petitioner received $24,737.37 as his share of the old partnership's profits, and $25,717.67 executor's commissions. *18 On March 28, 1933, he filed an income tax return for the period from June 11, 1932 to December 31, 1932, but on it this $50,455.04 was not shown. In the bankruptcy proceeding, the Commissioner filed a claim for tax on the income received by petitioner in 1932 prior to June 11. The claim was, as both parties say, expunged by the referee on the ground that the tax year was not divisible and the tax could not be claimed on income for part of the year. On July 21, 1933, petitioner filed an "amended and corrected return" for the period from June 11, 1932 until the end of the year. On February 10, 1936, he filed an "amended and corrected" return for the calendar year 1932 on which was shown $25,775.23 as his share of the partnership earnings and $25,717.67 executor's commissions. 2. The following amounts were distributed to the trustee by the old partnership as petitioner's share of fees earned but uncollected before he filed his petition in bankruptcy: 1933, $16,001.96; 1934, $2,295.89; 1935, $6,778.46. The referee expunged the Commissioner's share for taxes for those years on the ground that to the trustee the distributions were not income but the collection of accounts receivable. *19 3. During 1932, before bankruptcy, petitioner sold 126 shares and 63 Class A shares of Syracuse Mortgage Company. The cost of these shares was $504 for the 126 shares and nothing for the Class A. On sale he $126received for the 126 shares and $94 for the Class A shares. Thus (as respondent concedes) he sustained a loss in 1932 of $284. The following securities had been acquired in petitioner in the years and at the costs stated: 200 shares Syracuse Washer
1928
$5,631.20
225 shares Lincoln Equities
1929
3,600.00
100 shares Lincoln Bank
1929
3,500.00
200 shares Eastern States
1930
7,612.50 At the time the petition in bankruptcy was filed the shares of Lincoln National Bank and of Lincoln Equities were held as collateral for undisclosed obligations by First Trust & Deposit Company and the shares of Syracuse Washer and of Eastern States were held as collateral for undisclosed obligations by Salt Springs Bank. These shares were either sold by the banks or turned over by the banks to the trustee in bankruptcy. 5. The petitioner at the time of bankruptcy owned forty-nine shares, par value $100, of Adams Salina Corporation, which had formerly been called Cooney and Wallace *20 Company, Inc. These shares he had acquired when the corporation was organized in 1917 by petitioner and Wallace. They had, together, put in properties or "equities" and the corporation immediately carried the properties on its books at a value of $25,000. From time to time between the time of organization and 1932, petitioner and Wallace advanced money to the corporation for various purposes such as paying interest and buying properties. The aggregate amount of petitioner's advances was $21,351.40. No notes or other evidences of indebtedness were received by petitioner and no interest was paid to him. At the time of petitioner's bankruptcy, the corporation owned three pieces of real estate in Syracuse which were bought for a rise in value and had produced income. Two of these properties were mortgaged, one for $50,000 and the other for $120,000. In 1932, the former was transferred to the mortgagee in discharge of the mortgage, and the latter was sold on foreclosure. In August 1932, at the instance of a judgment creditor, the third property was sold at a sheriff's sale. These forty-nine shares of Adams Salina stock were shown in the list of petitioner's assets filed with the trustee *21 in bankruptcy as having no value. In its tax returns for 1929, 1930 and 1931, signed by petitioner as president, the corporation showed net losses and stated that it had sustained a net loss for 1928. Opinion STERNHAGEN, Judge: 1. The petitioner does not deny that in 1932, before the bankruptcy, he received $50,455.04 in his legal practice and as executor. This was taxable income, but was never taxed. Petitioner relies upon the Commissioner's abortive attempt to reach it by a claim in bankruptcy as a reason why, equitably, the deficiency should be disallowed and, in effect, suggests that the referee's disallowance of the claim in bankruptcy is res judicata. The bankruptcy court, however, did not hold that petitioner was not taxable upon the amount but only that the determination of tax was premature. Neither the referee's disallowance nor the bankruptcy proceeding affected the government's right to the proper tax nor the Commissioner's right to determine a deficiency. These survived the bankruptcy. In re Bates Machine & Tractor Co., 8 Fed. (2d) 424; Eli McDonald, 23 B.T.A. 521. It is irrelevant, therefore, in this *22 proceeding whether, as petitioner suggests, the trustee in bankruptcy failed or refused to pay petitioner's tax on the income of the portion of 1932 prior to the adjudication in bankruptcy. The fact that the income was not taxed is sufficient for present purposes to sustain its inclusion in petitioner's gross income for the year. 2. The petitioner complains of the Commissioner's inclusion in his gross income for the years 1933, 1934, and 1935 of his distributive shares of the old partnership's income for those years which were distributed directly to the trustee in bankruptcy. The inclusion was correct. The petitioner was a member of the partnership, and as such he was individually taxable upon his distributive share whether distributed or not. [1] This liability was not discharged by the bankruptcy, and the fact that the income was necessarily turned over directly to the trustee did not operate to relieve him from the tax. Frances M. Parkford, 45 B.T.A. 461 (on review C.C.A. 9 [2]). *23 4. The evidence is not sufficient to establish that petitioner sustained losses in respect of the shares which had been held by the two banks as collateral. The respondent's stipulation of the cost and the evidence that the shares had been posted with the banks as collateral (although whether for a loan or otherwise, and the circumstances, do not appear) and probably turned over to the trustee in bankruptcy and perhaps sold are far from proving a loss in fact, even if as a matter of law might have substantiated a deduction. Merely transferring property to the taxpayer's trustee in bankruptcy is not necessarily the occasion of a loss. Frances M. Parkford, supra, cf. Charles R. Stuart, 38 B.T.A. 1147, I.T. 2898, C.B. XIV-1, p. 70. Proof of loss is not made by a showing that the claimed losses were deducted on petitioner's tax returns, for they are the very deductions which the Commissioner disallowed and which were therefore to be substantiated by evidence. The disallowance is sustained. 5. The evidence does not justify a finding that the petitioner sustained a loss in 1932 in respect of the Adams Salina Corporation *24 shares or that a debt of that corporation to him for advances became worthless in that year. Such evidence as there is rather indicates that both the shares and the debts (if any) became worthless in prior years. The Commissioner's disallowance of the deduction is sustained. 6. No return for the year 1932 was filed by petitioner until March 28, 1933, when the return for part of the year was filed. For the full year, no return was filed until February 10, 1936. The failure to make and file a return before March 15, 1933, which was the time prescribed by law, was not shown to be due to reasonable cause; and under such circumstances the Revenue Act of 1932, sec. 291, provides that twenty-five per centum shall be added to the tax. The deficiency for 1932 will be enlarged accordingly. Decision will be entered under Rule 50. Footnotes
1. SEC. 182. TAX OF PARTNERS
There shall be included in computing the net income of each partner his distributive share, whether distributed or not. of the net income of the partnership for the taxable year. ↩
2. BTA decision affirmed by CCA-9.↩